UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OMID RASHIDI, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>    Defendants. | Civil Action No. 23-1569 (JEB) |

**MEMORANDUM OPINION**

Plaintiffs are Iranian nationals who applied for non-immigrant visas to attend post-graduate programs at various U.S. academic institutions this fall. In this suit, they contend that the six to eight months each of them has waited for a final decision (as of the filing of the Complaint) constitutes an "unreasonable delay" in violation of the Administrative Procedure Act. The Government now moves to dismiss, which Plaintiffs oppose; they also move for limited discovery. At the outset, the Court will dismiss the three Plaintiffs who have since received final decisions on their visa applications and two Defendants with respect to whom Plaintiffs lack standing. As to the parties remaining, the Court will grant the Motion to Dismiss on the merits and deny the Motion for Discovery.

**I.  Background**

    A.  Legal Background

Foreign students who wish to pursue a "full course of study" in a U.S. academic institution may apply for an "F-1" non-immigrant visa. See 8 U.S.C. § 1101(a)(15)(F). Similarly, "exchange visitors" who have been accepted into an approved program to teach or

study may apply for a non-immigrant visa under the "J-1" classification. See id. § 1101(a)(15)(J). Spouses and minor children can accompany them by applying for a derivative "F-2" or "J-2" visa. See id. § 1101(a)(15)(F)(ii), (J). Typically, all of these applicants must appear for an in-person interview with a consular officer to evaluate their eligibility. See id. § 1202(h). Absent a visa sanction against the applicant's country (which may exist under circumstances not relevant here), the officer must either "issue" or "refuse" the visa. See 22 C.F.R. § 41.121(a).

The visa shall be refused "if (1) it appears to the consular officer from statements in the application, or in the papers submitted therewith, that [the non-citizen] is ineligible to receive a visa . . . , (2) the application fails to comply with the [Immigration and Nationality Act], or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa." 8 U.S.C. § 1201(g). In cases where the officer requires additional information to determine the applicant's eligibility, however, he may refuse the visa pending further "administrative processing." U.S. Dep't of State, Administrative Processing Information (last visited Sept. 5, 2023), https://bit.ly/2GO3jEg [https://perma.cc/NK8K-9U8H]. The status of each application is published on the State Department's website. See U.S. Dep't of State, Visa Status Check (last visited Sept. 5, 2023), http://tinyurl.com/52px458z [https://perma.cc/SBV4-AT2N].

In the wake of the September 11 terrorist attacks, Congress enacted the Enhanced Border Security and Visa Entry Reform Act of 2002. The Act, among other things, imposed new restrictions on the issuance of visas and more stringent procedures for monitoring the entry and exit of foreign students and exchange visitors. See, e.g., 8 U.S.C. §§ 1731–32, 1735, 1761–62. It provides, as relevant here, that non-immigrant visas may not be issued to a non-citizen from a

country that has been designated a state sponsor of terrorism "unless the Secretary of State determines . . . that [the non-citizen] does not pose a threat to the safety or national security of the United States."  Id. § 1735.  Iran has been so designated since 1984.  See U.S. Dep't of State, State Sponsors of Terrorism (last visited Sept. 5, 2023), http://tinyurl.com/mtd2aasf [https://perma.cc/CBT2-2C87].

  B. Factual Background

With this statutory and regulatory backdrop in mind, the Court proceeds to the facts, which it draws from the Complaint, as required at this stage.  Plaintiffs are six Iranian F- and J-visa applicants who seek to attend post-graduate research programs (or accompany an attending spouse) at universities across the United States.  See ECF No. 1 (Compl.), ¶¶ 1, 8–13.  All of them interviewed with consular officers at the U.S. Embassy in Yerevan, Armenia, between October and November 2022, id., ¶¶ 37, 53, 71, 86, 102, and all were told that their applications were refused pending further administrative processing.  Id., ¶¶ 38, 54, 72, 87, 103.  The Embassy, in each case, followed up with a sheet of supplemental questions or an email requesting additional background information and documentation, which Plaintiffs, by all accounts, "prompt[ly]" furnished.  Id., ¶¶ 38–39, 55–58, 73–74, 88–89, 104–05.

The specific circumstances of Plaintiffs' visa-processing delays are as follows: Dr. Omid Rashidi was offered a position as a research scholar at Washington University in St. Louis, where he hoped to perform cardiovascular research.  Id., ¶ 35.  He interviewed on November 22, 2022, but never received a final decision.  Id., ¶¶ 37, 44.  His wife, who had separately applied for a J-1 visa to perform research in the same lab at WashU, by contrast, was issued a visa "immediately." Id., ¶ 40.  Parisa Haghi Cheraghtapeh was admitted to a PhD program in Mechanical Engineering at Johns Hopkins University.  Id., ¶ 51.  She and her husband, Amir Hossein Mirzaei, applied for

3

visas and interviewed jointly on November 29, 2022, but were similarly left in limbo. Id., ¶¶ 50–53, 62. The couple feared that Cheraghtapeh would lose her offer of admission, waiver of tuition, and other benefits if she was unable to enter the United States in time for the Fall 2023 semester. Id., ¶ 64.

The other Plaintiffs tell a similar story: Mehran Saedi looked forward to attending a PhD program in Chemical Engineering at the University of Houston and interviewed on October 18, 2022. Id., ¶¶ 69, 71. Mohammadamin Motaharinia and Ehsan Naderi likewise wished to pursue PhDs in Electrical Engineering at the University of California, Los Angeles, and New Mexico State University, respectively, and interviewed on separate days in November. Id., ¶¶ 84, 86, 100, 102.

In the ensuing months, Plaintiffs emailed the Embassy at various times requesting an update on the status of their applications and warning that they might lose their offers of admission. Id., ¶¶ 42–43, 60–61, 75–76, 90–92, 106–08. These entreaties, however, were met with silence. Id. Frustrated by the delay, on June 1, 2023, Plaintiffs sued the State Department, the Department of Homeland Security, their respective heads (Secretaries Antony Blinken and Alejandro Mayorkas), Consul Stephanie Zakhem of the U.S. Embassy in Yerevan, and several other unnamed consular officers stationed there. They point to emails by U.S. Embassies in other countries indicating that administrative processing of F and J visas typically takes place within 60 to 90 days, id., ¶¶ 46, 65, 80, 96, 112, and argue that the delays at issue here — roughly six to eight months — are unreasonable in violation of the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1). Id., ¶¶ 115–65.

Since this action was filed, Cheraghtapeh, Mirzaei, and Saedi all received final decisions on their visa applications. See ECF No. 11 (Def. MTD) at 14; ECF No. 12 (Pl. Opp. & Mot.) at

4

1 n.1. Defendants now move to dismiss the Complaint in its entirety, and Plaintiffs, in opposition, move for limited discovery into the visa-application process at Yerevan.

## II.     Legal Standard

Defendants' Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence."  Bagherian v. Pompeo, No. 19-1049, 2020 WL 674778, at *2 (D.D.C. Feb. 11, 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)).  The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Though a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

5

**III.    Analysis**

As a threshold matter, the parties agree that Saedi, Cheraghtapeh, and Mirzaei's claims are now moot because their respective visa applications have been finally adjudicated. See Pl. Opp. & Mot. at 1 n.1; ECF No. 14 (Def. Reply & Opp.) at 1. The Court will, accordingly, dismiss these Plaintiffs. The Government raises a number of other preliminary arguments for dismissal that are by now quite familiar to the Court. After addressing those briefly, the Court will turn to the merits of Plaintiffs' unreasonable-delay claims and then their request for discovery.

    A.  Preliminary Arguments

The Government contends that the remaining Plaintiffs: (1) lack standing because they have no right to a visa, their applications have already been refused pursuant to Section 1735, and they name officials as defendants who cannot provide the requested relief, see Def. MTD at 8–14, 24–26; (2) raise claims that are all non-justiciable, in part because they are barred by the consular non-reviewability doctrine, id. at 21–24, 26–30; and (3) fail to adequately allege unreasonable delay because there is no discrete action that Defendants were required to take. Id. at 15–21. The Court just last month dealt with these precise issues in Khazaei v. Blinken, 2023 WL 6065095 (D.D.C. Sept. 18, 2023), where the Government had raised the same arguments nearly verbatim. So as not to spill unnecessary ink, the Court here adopts its analysis from that Opinion. Id. at *3–5. All three of those arguments founder for the reasons stated in Khazaei.

There is, however, a minor wrinkle with respect to standing that did not arise in that case. Defendants here suggest that Plaintiffs lack standing to bring claims against DHS and Secretary Mayorkas because they do not show that either was "involved in the refusal of their visa applications or are playing any ongoing role in Plaintiffs' requests for visas." Def. MTD at 24.

6

The Court agrees. To establish constitutional standing, a plaintiff must show, among other things, that his injury is "causal[ly] connect[ed]" to the defendant's conduct and can "likely" be "redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). Plaintiffs have alleged that DHS "is responsible for . . . security and background checks of visa applicants worldwide," and that Mayorkas "oversees DHS operations . . . [and] has ultimate responsibility for ensuring completion of certain security and background checks conducted on Plaintiffs." Compl., ¶¶ 17–18. They also cite a 2002 agreement between DHS and State showing that DHS must be consulted in connection with the Section 1735 security determination that Plaintiffs (as citizens of Iran) would need to receive a visa. See Pl. Opp. & Mot. at 16. Absent, however, are facts suggesting that the delays at issue here are caused by such security screening or that there is any action DHS could take to hasten review of their applications. Plaintiffs' insinuation that the agency might be responsible for, and able to remedy, such delays is simply too speculative a basis for this Court's jurisdiction. See Defs. of Wildlife, 504 U.S. at 561 (ruling that it "must be 'likely,' as opposed to merely 'speculative,'" that the injury can be redressed); see also Khoshrou v. Blinken, 2023 WL 4930086, at *3 (D.D.C. Aug. 2, 2023) (dismissing claims against DHS because "the 'sheer possibility' that a defendant played a role in the delayed processing of a visa is not adequate to establish standing") (citation omitted); Siddiqui v. Blinken, 2022 WL 17744079, at *3 (D.D.C. Dec. 14, 2022) (similar).

DHS and Secretary Mayorkas, consequently, shall be dismissed, and the Court may now turn to the substance of the unreasonable-delay claims against the remaining Defendants.

B. TRAC Factors

When a plaintiff asserts a claim for unreasonable delay under §§ 555(b) and 706(1), the central inquiry is "whether the agency's delay is so egregious as to warrant mandamus."

Telecommunications Rsch & Action Ctr. v. FCC (TRAC), 750 F.2d 70, 79 (D.C. Cir. 1984). The Court considers the six oft-employed TRAC factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (cleaned up).

These considerations are often grouped into four basic inquiries. "First, is there any rhyme or reason — congressionally prescribed or otherwise — for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?" Rahman v. Blinken, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up).

The first two factors clearly favor Defendants. There is, of course, no statutory timeline for adjudicating non-immigrant F and J visa applications — a point that Plaintiffs concede. See Pl. Opp. & Mot. at 30 n.10. "Absent a congressionally supplied yardstick, caselaw guides the Court's interpretation." Whitlock v. U.S. Dep't of Homeland Sec., 2022 WL 424983, at *6 (D.D.C. Feb. 11, 2022) (cleaned up). Plaintiffs cite no comparable case in which a delay of six to seven months — the delays the remaining three Plaintiffs experienced (as of the filing of the Complaint) — was found unreasonable. On the contrary, the courts of this district have

dismissed claims, over and over, challenging delays in processing non-immigrant visa requests substantially longer than that. See, e.g., Sawahreh v. United States Dep't of State, 630 F. Supp. 3d 155 (D.D.C. 2022) (finding 15-month delay in processing J-1 visa application reasonable); Penn v. Blinken, 2022 WL 910525 (D.D.C. Mar. 29, 2022) (same as to 22-month delay for non-immigrant K-1 visa applications); Yacoub v. Blinken, 2022 WL 4598681 (D.D.C. Sept. 30, 2022) (same as to one-and-a-half- to three-and-a-half-year delay).

Nor is the Court persuaded by the notion that State's asserted policy of prioritizing student and exchange-visitor visas — or that the 60- to 90-day timeframe that various embassies have represented is the typical administrative-processing time — operates as a rule of reason that State has violated in this case. Contra Pl. Opp. & Mot. at 29–30 & n.10. As in Milligan v. Blinken, 2021 WL 3931880 (D.D.C. Sept. 2, 2021), Plaintiffs "put forth no compelling reason why the 'public facing announcements' of an agency," let alone of other embassies, "should be understood to supply the granular substance of a rule of reason." Id. at *8. Further, even if the Court regarded State's policy and the timeframe announcements in question as constituting such a rule, Plaintiffs allege nothing to suggest that State has failed to prioritize J and F visas at a systemic level, or that the 60-to-90-day wait time has become atypical. The guidance on which they rely, after all, consistently adds that processing time "is difficult to predict" and "can take significantly longer" in "some instances." ECF No. 1-1 (Compl. Exhibits) at 4, 16, 19 (Emails from U.S. Embassy Islamabad); id. at 9, 18 (Emails from U.S. Embassy Kuala Lumpur).

This is not to imply, of course, that there are no possible circumstances under which a delay of six to eight months would be unreasonable. See Mashpee Wampanoag Trib. Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (noting that whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond

9

which agency inaction is presumed to be unlawful"). At the very least, however, the remaining factors would need to weigh decisively in Plaintiffs' favor. Here they do not.

Factors three and five favor Plaintiffs, but only to a modest degree. While the Court acknowledges the substantial disruption to their academic and career plans and the associated financial benefits at stake in this matter, see Pl. Opp. & Mot. at 34, they fail to plead the kind of personal hardship that bears significant weight in a TRAC factor analysis. Cf. Da Costa v. Immigr. Inv. Program Off., 2023 WL 5313526, at *9 (D.C. Cir. Aug. 18, 2023) ("The financial harms [Plaintiff] alleges, along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip TRAC factors three and five in his favor."); see also Sawahreh, 630 F. Supp. 3d at 163–64 (dismissing unreasonable-delay claim, even though delay "jeopardiz[ed]" plaintiff's career trajectory, among other harms).

Factor four, which is dispositive in some cases, see Norton, 336 F.3d at 1100, straightforwardly favors Defendants. Plaintiffs seek an order requiring the Government to "render a decision on [their] J-1, F-1, and F-2 visa applications without further delay." Compl. at 30. Such an order would necessarily require State to prioritize Plaintiffs' applications "at the expense of other similarly situated applicants." Da Costa, 2023 WL 5313526, at *8 (citation omitted). The Court may have reached a different conclusion had Plaintiffs plausibly alleged that they were "singled out for slower adjudication," but they have not. Id. Indeed, the deluge of unreasonable-delay suits filed in this district in recent years, and involving F and J visa applications, would strongly suggest otherwise. See, e.g., Rahman, 2023 WL 196428; Sawahreh, 630 F. Supp. 3d 155; Khazaei, 2023 WL 6065095; Khan v. Blome, 2022 WL 17262219 (D.D.C. Nov. 29, 2022); Rezaei v. Garland, 2023 WL 5275121 (D.D.C. Aug. 16, 2023).

As to factor six, an allegation of bad faith is altogether absent from Plaintiffs' Complaint. They suggest that the fact that Defendants have exceeded the standard 60-to-90-day processing time and have processed some later-interviewed visa applications before Plaintiffs' creates an "appearance of impropriety." Pl. Opp. & Mot. at 34. But as Plaintiffs do not argue — let alone allege facts suggesting — that this is the result of wrongdoing and not legitimate processing issues associated with Plaintiffs' individual applications, this factor does not move the needle.

In short, because Plaintiffs failed to adequately plead that a final decision on their visa applications has been unreasonably delayed, their Complaint shall be dismissed.

C. Discovery

In a last-ditch effort to stave off dismissal, Plaintiffs suggest that the above analysis is premature because limited discovery into the Yerevan Embassy's visa-application-review process is necessary to assess whether the delay is in fact unreasonable under TRAC. Although discovery is typically not available in APA cases, see Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd., 663 F.3d 476, 487 (D.C. Cir. 2011), Plaintiffs urge the Court to permit it here. They seek to learn, among other things, how Defendants' policies prioritizing student and exchange-visitor visas are "carried out" at Yerevan and other consular posts; "statistics and explanation as to how long [a Section 1735 determination] typically takes," the steps involved, and the determination's effect on the "length and complexity in processing nonimmigrant F-1 and J-1 visa applications"; the "existence and extent of any 'processing limitations'"; the existence of a "visa-processing 'queue' in Yerevan"; "[a]nomalies" at Yerevan that have "resulted in later-interviewed applicants" receiving decisions before Plaintiffs; "specific burdens" Defendants would shoulder if ordered to adjudicate Plaintiffs' applications; and the "existence or absence of 'good faith.'" Pl. Opp. & Mot. at 35–36.

11

The Court acknowledges that these inquiries bear on TRAC factors one, four, and six, but it need not wait for discovery to assess whether Plaintiffs have plausibly alleged that any of those factors militate in their favor. See Iqbal, 556 U.S. at 686 (Where plaintiff's "complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); see also Khan, 2022 WL 17262219, at *4 (concluding that "[i]t is appropriate to [evaluate the TRAC factors] at the motion-to-dismiss stage"); Sawahreh, 630 F. Supp. 3d at 161 (same); Skalka v. Kelly, 246 F. Supp. 3d 147, 151 (D.D.C. 2017) (same).

As to factor one, as explained earlier, Plaintiffs have not plausibly alleged that State violated its own policy of prioritizing F and J visa applications or that it is no longer true that processing typically takes up to 60 to 90 days — that is, on the dubious assumption that such statements even constitute a rule of reason. They cite no case, furthermore, in which a court held that a visa-processing delay of roughly six to seven months was unreasonable. Given these deficiencies and the sheer brevity of the delays at issue, discovery is unwarranted.

As to factor four, one need not unearth the details of the visa-adjudication process at Yerevan and elsewhere to surmise that the relief Plaintiffs seek would reorder State's priorities. That outcome is obvious "[w]here the agency action sought is one of many similar adjudications that the agency must complete." Skalka, 246 F. Supp. 3d at 153 (D.D.C. 2017); see also Khoshrou, 2023 WL 4930086, at *7 (noting that "prompt adjudication of [the plaintiff's] visa application . . . would mean that others waiting for adjudication would be displaced"). Finally, as to factor six, as previously noted, Plaintiffs allege no facts supporting an inference of bad faith. Nor have they offered more than rank speculation in their briefs. That too does not suffice for discovery.

Nor do the out-of-circuit cases on which Plaintiffs rely meaningfully advance their argument. See Pl. Opp. & Mot. at 36–37; ECF No. 16 (Pl. Reply) at 2–3. Barrios Garcia v. U.S. Department of Homeland Security, 25 F.4th 430 (6th Cir. 2022), and Gonzalez v. Cuccinelli, 985 F.3d 357 (4th Cir. 2021), indeed support the proposition that the TRAC analysis is fact intensive and "thus sits uncomfortably at the motion to dismiss stage." Gonzalez, 985 F.3d at 375. Both courts still found, nevertheless, that the plaintiffs had sufficiently alleged an unreasonable delay in their Complaint before permitting discovery — and based on facts more compelling than those asserted here. In each case, the plaintiffs were victims of serious crimes who cooperated with U.S. law enforcement and, based on that assistance, applied for non-immigrant U-visas. See Barrios Garcia, 25 F.4th at 435; Gonzalez, 985 F.3d at 360; see also 8 U.S.C. § 1101(a)(15)(U). They had all waited more than three years for a decision on their visa applications and alleged sufficient harm to their health and wellness. See Barrios Garcia, 25 F.4th at 452 (plaintiffs' risk of being deported, inability to reunite with family living abroad or to obtain ID cards, employment, and healthcare, *inter alia*, sufficed to state claim that three-to-five-year delay was unreasonable); Gonzalez, 985 F.3d at 364, 375 ("Plaintiffs have pled sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by the [more than four-year] wait."). The delays at issue here, which lasted roughly six to seven months and risk only educational and professional opportunities, while serious in their own right, are simply not comparable.

A final point is worth bearing in mind: Plaintiffs' requested discovery is rather broad and arrives in a type of suit in which discovery typically does not occur. Given the surfeit of lawsuits challenging delays in processing visa applications that is currently swamping our courts,

13

discovery in every such case would lead to a substantial imposition on the Government. The Court will therefore decline to order discovery without a sturdier basis for doing so.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss and deny Plaintiffs' Motion for Discovery. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 4, 2023